**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
                                                    )
UNITED STATES OF AMERICA, and        )
THE COMMONWEALTH OF                   )
MASSACHUSETTS,                              )
                                                    )
        Plaintiffs,                                )
                                                    )
                v.                                   )        Civil No. 1:20-cv-11026
                                                    )
SPRAGUE RESOURCES LP, and           )
SPRAGUE OPERATING RESOURCES,       )
LLC,                                               )
                                                    )
        Defendant.                               )
_____)

## COMPLAINT

        Plaintiffs, the United States of America, by the authority of the Attorney General acting

at the request of the Administrator of the Environmental Protection Agency ("EPA"), and the

Commonwealth of Massachusetts, acting by and through the Massachusetts Department of

Environmental Protection ("MassDEP") and the Massachusetts Office of the Attorney General

(together, "Massachusetts" or the "Commonwealth"), file this Complaint and allege as follows:

## NATURE OF ACTION

        1.        This is a civil action against Sprague Resources L.P. and Sprague Operating

Resources, LLC (together and individually, "Sprague") under Sections 113(a)(1) and 113(b)

of the Clean Air Act (the "Federal Act"), 42 U.S.C. §§ 7413(a)(1) and 7413(b), and the

Massachusetts Clean Air Act (the "Massachusetts Act"), M.G.L. c. 111, §§ 142A-142O.

        2.        Plaintiffs United States and Massachusetts seek injunctive relief and/or civil

penalties for violations of the Federal Act and Massachusetts's state implementation plan (the

"MA SIP"), which includes federally approved portions of the Massachusetts air pollution

control regulations (310 C.M.R. 7.00 *et seq.*; the "MA Regulations"), in connection with Sprague's unlawful and unpermitted air emissions of volatile organic compounds ("VOCs") at petroleum and asphalt storage and distribution facilities in Massachusetts.

3.      In connection with Sprague's conduct, Plaintiff Massachusetts also seeks injunctive relief and civil penalties for violations of the Massachusetts Act and certain requirements of the MA Regulations, over which this Court has supplemental jurisdiction.

4.      This is also a civil action that Plaintiff United States brings against Sprague under Sections 113(a)(1) and 113(b) of the Federal Act, 42 U.S.C. §§ 7413(a)(1) and 7413(b), and the Maine state implementation plan ("ME SIP"), which includes federally approved portions of Maine's Air Pollution Control Regulations, Chapters 100-165 ("ME APC Regulations"), promulgated by the Maine Department of Environmental Protection ("ME DEP").  The United States seeks civil penalties and injunctive relief for violations of these statutes and regulations, under Section 113 of the Federal Act in connection with Sprague's unlawful and unpermitted air emissions of VOCs at petroleum and asphalt storage and distribution facilities in Maine.

5.      Additionally, this is a civil action that Plaintiff United States brings against Sprague under Sections 113(a)(1) and 113(b) of the Federal Act, 42 U.S.C. §§ 7413(a)(1) and 7413(b), and the New Hampshire state implementation plan ("NH SIP"), which includes federally approved portions of New Hampshire's air pollution control requirements, entitled Env-A Chapters 100-3600, promulgated by the New Hampshire Department of Environmental Services ("NHDES").  The United States seeks civil penalties and injunctive relief for violations of these statutes and regulations, under Section 113 of the Federal Act in connection with Sprague's unlawful and unpermitted air emissions of VOCs at a petroleum and asphalt storage and distribution facility in New Hampshire.

6.      This is also a civil action that Plaintiff United States brings against Sprague under

Sections 113(a)(1) and 113(b) of the Federal Act , 42 U.S.C. §§ 7413(a)(1) and 7413(b), and the

Rhode Island state implementation plan ("RI SIP"), which includes federally approved portions

of the Rhode Island Air Pollution Control Regulations, Regulation Numbers 1-38 ("RI APC

Regulations"), promulgated by the Rhode Island Department of Environmental Management

("RIDEM").  The United States seeks civil penalties and injunctive relief for violations of these

statues and regulations, under Section 113 of the Federal Act in connection with Sprague's

unlawful and unpermitted air emissions of VOCs at a petroleum and asphalt storage and

distribution facility in Rhode Island.

## PARTIES

7.      Co-Plaintiff United States of America has authority to bring this action under

Section 305 of the Federal Act, 42 U.S.C. § 7605, and 28 U.S.C. §§ 516 and 519.

8.      Co-Plaintiff Commonwealth of Massachusetts appears by and through MassDEP

and the Attorney General.  The Attorney General is the chief law officer of the Commonwealth

and is authorized by the Massachusetts Act and M.G.L. c. 12, §§ 3 and 11D, to bring this action

and seek the relief requested herein. Under the Massachusetts Act, MassDEP adopts,

administers, and enforces the MA Regulations, which prevent pollution or contamination of the

atmosphere. M.G.L. c. 111, §§ 142A – 142C.

9.      Defendant Sprague Resources LP is a Delaware limited partnership formed in

2011, with principal executive offices located at 185 International Drive, Portsmouth, New

Hampshire, 03801.

10.     Defendant Sprague Operating Resources, LLC is a Delaware limited liability

company created in November 1987, with its principal office located at 185 International Drive,

Portsmouth, New Hampshire, 03801.

11.     Together, the Sprague entities own and operate bulk No. 6 oil and asphalt storage and distribution facilities located at 43 Beacham Street, Everett, Massachusetts (the "Everett Facility"), 728 Washington Street, Quincy, Massachusetts (the "Quincy Facility"), Mack Point - Trundy Road, Searsport, Maine (the "Searsport Facility"), 59 Main Street, South Portland, Maine (the "South Portland Facility"), 372 Shattuck Way, Newington, New Hampshire (the "Newington Facility"), and 144 Allens Avenue, Providence, Rhode Island (the "Providence Facility").

12.     The Sprague entities are "persons" within the meaning of Section 302(e) of the Federal Act, 42 U.S.C. § 7602(e), and the MA Regulations.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action, and over Sprague, under Sections 113(a)(1), (a)(3) and (b) of the Federal Act, 42 U.S.C. §§ 7413(a)(1) and (b), and 28 U.S.C. §§ 1331, 1345, and 1355, because this is a civil action arising under the laws of the United States, this is a civil action commenced by the United States, and this is an action for the recovery of a penalty incurred under an act of Congress.

14.     This Court has supplemental jurisdiction over the state law claims asserted by the Commonwealth under 28 U.S.C. § 1367.

15.     Venue is proper in this District under Sections 113(a)(1) and (b) of the Federal Act, 42 U.S.C. §§ 7413(a)(1) and (b), and 28 U.S.C. §§ 1391(b)-(c) and 1395(a), because all or a substantial part of the events or omissions giving rise to the claims in this Complaint occurred within this District and certain properties owned and operated by Sprague that are the subjects of this action (*i.e.*, the Everett and Quincy Facilities) are situated in this District, making the defendants subject to the Court's personal jurisdiction.

16.     Notice of the commencement of this action has been given to the Commonwealth of Massachusetts, the State of Maine, the State of New Hampshire, and the State of Rhode Island under Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b).

## STATUTORY AND REGULATORY FRAMEWORK

A. Federal Act

17.     The Federal Act, 42 U.S.C. §§ 7401, *et seq.*, establishes a comprehensive scheme for air pollution prevention and control, as described in Section 101 of the Federal Act, 42 U.S.C. § 7401.

18.     Section 108(a) of the Federal Act, 42 U.S.C. § 7408(a), requires EPA to list and issue air quality criteria for each air pollutant, the emissions of which may endanger public health or welfare and the presence of which results from numerous or diverse mobile or stationary sources.

19.     Section 109(a) of the Federal Act, 42 U.S.C. § 7409(a), requires EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS") for those air pollutants for which air quality criteria have been issued under Section 108 of the Federal Act.

20.     Under Sections 108 and 109 of the Federal Act, 42 U.S.C. §§ 7408 and 7409, EPA has listed and issued air quality criteria and NAAQS for ambient air pollutants, including ozone.  40 C.F.R. § 50.9.  The NAAQS for ozone is set forth in 40 C.F.R. Part 50.

21.     Under Section 107(d) of the Federal Act, 42 U.S.C. § 7407(d), each state is required to categorize areas within its boundaries according to its air quality for each criteria pollutant, as follows: an area that meets the NAAQS for a pollutant is deemed an "attainment" area; an area that does not meet the NAAQS for that pollutant is deemed a "non-attainment" area; and an area that cannot be classified because of insufficient data is deemed

"unclassifiable." Air quality designations for states are subject to approval by EPA. EPA-approved air quality designations are set forth in 40 C.F.R. Part 81.

22. Section 110 of the Federal Act, 42 U.S.C. § 7410, requires each state to adopt and submit to EPA for approval a state implementation plan ("SIP") that provides for the attainment and maintenance of the NAAQS for each criteria pollutant in each air quality control region within the state. Once EPA has approved a SIP, the United States may enforce the SIP's requirements under Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b).

23. Ozone is the primary ingredient in smog and forms when VOCs react with nitrogen oxides in sunlight. Ground level ozone is a highly reactive gas that affects the normal function of the lung in many healthy humans. Ozone can inflame and cause harmful changes in breathing passages, decrease the ability of the lungs to assimilate oxygen, and cause coughing and chest pain. Ozone also increases susceptibility to respiratory infection. Breathing air with excessive ozone concentrations aggravates symptoms of people with pulmonary diseases and may increase rates of asthma attacks. Prolonged exposure to ozone may also cause permanent damage to lung tissue and interfere with the functioning of the immune system. Ozone also causes toxic effects in plants and degrades materials such as rubber and fabric.

24. To control ozone formation, EPA and the states have sought to control VOCs and nitrogen oxide emissions.

25. Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), authorizes the United States to commence a civil judicial enforcement action for violations of any requirement or prohibition of Subchapter I of the Federal Act, 42 U.S.C. §§ 7401-7515, or any rule or order promulgated or issued thereunder, seeking civil penalties, injunctive relief, or both.

B. <u>Massachusetts Act, Regulations, SIP</u>

26.     The Massachusetts Act gives MassDEP broad authority to "adopt regulations . . . to prevent pollution or contamination of the atmosphere."  M.G.L. c. 111, § 142A.  *See also* MG.L. c. 111, §§ 142B and 142C.

27.     Pursuant to its authority under the Massachusetts Act, MassDEP adopted the MA Regulations "to prevent the occurrence of conditions of air pollution where such do not exist and to facilitate the abatement of conditions of air pollution where and when such occur."  310 C.M.R. 7.00 (preamble).  These regulations "are designed to attain, preserve, and conserve the highest possible quality of the ambient air compatible with needs of society."  *Id.*

28.     Massachusetts adopted a "state implementation plan" within the meaning of Sections 110 and 113(a)(1) of the Federal Act, 42 U.S.C. §§ 7410, 7413(a)(1), for the control of, among other things, ozone.  The MA SIP, approved by EPA under Section 110 of the Federal Act, 42 U.S.C. § 7410, contains portions of the MA Regulations promulgated at various times, at 310 C.M.R. 7.00 *et seq.  See* 40 C.F.R. §§ 52.1120, 52.1167; 83 Fed. Reg. 3965-3982 (Jan. 29, 2018).

29.     Under the MA SIP and the MA Regulations, a "facility" is any "installation or establishment and associated equipment, located on the same, adjacent or contiguous property" that is capable of discharging or releasing air contaminants to the ambient air.  310 C.M.R. 7.00 (definitions of "facility" and "emission").

30.     The MA SIP and the MA Regulations require a facility to obtain a "Plan Approval" from MassDEP prior to any construction, substantial reconstruction, or alteration of a facility that may emit contaminants to the ambient air.  MA SIP at 310 C.M.R. 7.02(2)(a); MA Regulations at 310 C.M.R. 7.02(1)(b), 7.02(3)(a).

31.     The MA Regulations further prohibit any subsequent operation of the facility that may emit contaminants to the ambient air following any construction, substantial reconstruction, or alteration, unless the facility holds a Plan Approval from MassDEP.  310 C.M.R. 7.02(1)(b), 7.02(3)(a).

32.     The MA SIP and the MA Regulations require a facility to obtain from MassDEP a Plan Approval addressing air contaminants such as VOC emissions prior to any construction, substantial reconstruction, or alteration of a facility.  MA SIP at 310 C.M.R. 7.02(2)(a); MA Regulations at 310 C.M.R. 7.02a(1)(b), 7.02(3)(a), 7.02(8)(a)(2).

33.     The MA Regulations further prohibit any subsequent operation of the facility following any construction, substantial reconstruction, or alteration, unless the facility provides applicable emissions limitations. 310 C.M.R. 7.02(3)(a); 310 C.M.R. 7.02(8)(a)(2).  The MA Regulations prohibit any false, inaccurate, incomplete, or misleading statements in any application, record, report, plan, design, statement, or document submitted to MassDEP pursuant to the Massachusetts Act or the MA Regulations.  310 C.M.R. 7.01(2)(a).

34.     The Massachusetts Act, M.G.L. c. 111, §§ 142A and 142B, makes any person who violates the MA Regulations liable to the Commonwealth for civil penalties of up to $25,000 per day per violation, and authorizes the Court to enjoin further violations.

C.   <u>Maine SIP</u>

35.     Maine adopted a SIP within the meaning of Sections 110 and 113(a)(1) of the Federal Act, 42 U.S.C. §§ 7410, 7413(a)(1).  EPA approved the ME SIP under Section 110 of the Federal Act.

36.     The term "source" is defined in Chapter 100 of the ME SIP to mean "any building, structure, facility, or installation which emits or may emit any regulated pollutant." The term "facility, building, structure, or installation" is defined in ME SIP Chapter 100 to mean

8

"all of the pollutant-emitting activities which belong to the same industrial grouping, are located on one or more contiguous or adjacent properties, and are under the control of the same person (or persons under common control)."

37.     Under Section II.A of Chapter 115 of the ME SIP, entitled "Emission License Regulations," no person may emit any air contaminant from any source without an air emission license, unless the source falls within one of the exemptions in Section II.C of Chapter 115.

38.     Under ME SIP Chapter 115, Section V.A.2.a, to receive an air emission license, an owner or operator must demonstrate, among other things, that the air emissions from its facility will be addressed adequately, including where appropriate implementation of the technology requirements specified in Section VI of Chapter 115.

39.     Under the ME SIP Chapter 115, Sections II.B and VI.B.1, a person may not commence construction of any source or modify an existing source without a license addressing air contaminants such as VOC emissions, unless the source is exempted under Section II.C of Chapter 115.

   D.  New Hampshire SIP

40.     New Hampshire adopted a "state implementation plan" within the meaning of Sections 110 and 113(a)(1) of the Federal Act, 42 U.S.C. §§ 7410, 7413 (a)(1).  EPA approved the NH SIP under Section 110 of the Federal Act.

41.     The NH SIP defines a "stationary source" to mean "any building, structure, facility, installation or other operation not identified as a mobile or indirect source which emits or may emit any air pollutant.  A stationary source consists of one or more devices located on one or more contiguous or adjacent properties owned or operated by the same person." Env-A 101(88).

42.     The NH SIP defines, in relevant part, a "major source" to mean a stationary source that is subject to 40 C.F.R. Part 70 and that has the potential to emit VOCs in the quantity of 50 tons per year or more.  Env-A 101(53)(c)(2).

43.     The NH SIP defines, in relevant part, a "miscellaneous" VOC stationary source to mean a stationary source with a combined theoretical potential VOC emissions for all processes and devices that equals or exceeds 50 tons of VOCs per consecutive 12-month period.  Env-A 1222.01(a).

44.     Under the NH SIP, the owner or operator of a miscellaneous VOC stationary source is required to implement measures to adequately address VOC emissions.  *See* Env-A 1222.02.

45.     Under the NH SIP, the owner or operator of a major stationary source of VOCs must apply for and obtain from NHDES a temporary permit addressing air pollutants such as VOC emissions, in accordance with Env-A 602.01, 603.01, 603.03, 610.04 (effective through October 25, 2015), and 618.04 (effective October 26, 2015, 80 Fed. Reg. 57722 (Sept. 25, 2015)), before the commencement of construction or installation of any new or modified device or the operation of any existing device.

46.     Following such construction, under the NH SIP, the owner or operator of a major source of VOCs must apply for and obtain from NHDES an operating permit requiring the implementation of measures to adequately address VOC emissions.  *See* Env-A 602.02, 603.01, 603.03, 610.04 (effective through October 25, 2015), and 618.04 (effective October 26, 2015, 80 Fed. Reg. 57722 (Sept. 25, 2015)).

47.     NHDES's Title V operating permit program applies to any facility that has the potential to emit 50 tons per year or more of VOCs.  *See* New Hampshire Air Program Rules, Env-A 609.

E.   Rhode Island SIP

48.     Rhode Island adopted a "state implementation plan" within the meaning of Sections 110 and 113(a)(1) of the Federal Act, 42 U.S.C. §§ 7410, 7413 (a)(1).  EPA approved the RI SIP under Section 110 of the Federal Act.

49.     The RI SIP provides that an owner or operator of a minor source must obtain from RIDEM a minor source permit addressing air contaminants such as VOC emissions before the commencement of construction, installation, or modification of any stationary source that has the potential to emit one hundred pounds or more per day, or ten pounds or more per hour, of any air contaminant.  *See* RI APC Regulation 9.3.1(g), 9.3.3.

F.   Title V of the Federal Act

50.     Section 503(2) of Title V of the Federal Act and EPA regulations at 40 C.F.R. § 70.5 require that a major source submit a timely and complete Title V operating permit application within 12 months of commencing operation as a major source.

51.     Under Section 502(a) of the Federal Act and EPA regulations at 40 C.F.R. § 70.7(b), no person shall operate a major source after the date it was required to submit an application for a Title V operating permit, except in compliance with a permit issued under the state's operating program.

**GENERAL ALLEGATIONS**

52.     Sprague distributes fossil fuel products such as gasoline, natural gas, heating oil, No. 6 oil, and asphalt in the northeastern United States.

Everett Facility

53.     The Everett Facility is a bulk asphalt storage and distribution facility located in Everett, Massachusetts.

54.     At the Everett Facility, asphalt is transferred from marine vessels into one or more of eight industrial tanks (the "Everett Asphalt Tanks") for storage on-site.

55.     To deliver asphalt from the Everett Facility to its customers, Sprague typically transfers asphalt from the Everett Asphalt Tanks, through piping and a truck loading rack, to tanker trucks, for delivery off-site.

56.     The asphalt handled by Sprague at its Everett Facility is, or would be, solid or semi-solid at ambient temperatures.

57.     The Everett Asphalt Tanks are heated to store asphalt at temperatures far higher than ambient air.  Asphalt must be heated to such temperatures for it to be sufficiently liquid to be properly transferred into or out of the Everett Asphalt Tanks, through pipes, from or to marine vessels, or to truck loading racks and from there to tanker trucks, for shipment off-site.

58.     The process of heating the asphalt and maintaining it at temperatures above ambient temperatures causes VOC emissions to the ambient air.

59.     In 2001, Sprague purchased the Everett Facility from Exxon Mobil Corporation ("Exxon Mobil"), which had discontinued operations and shut down the Everett Facility.

60.     In 2002, in order to prepare the Everett Facility to conduct asphalt storage and transfer operations, Sprague upgraded the facility, including without limitation, the Everett Asphalt Tanks, piping, and the heating plant and building, in order to reopen the facility.

61.     The Everett Facility is a "facility" under the MA SIP and the MA Regulations.

62.     Through its activities at the Everett Facility in 2002, and its construction of a new heat plant and building at the Everett Facility, Sprague constructed, substantially reconstructed, or altered the Everett Facility without applying for or obtaining a Plan Approval from MassDEP.

63.     Sprague's reactivation of the facility starting in 2002, after approximately four years of permanent shutdown, constituted construction, substantial reconstruction, or alteration of the Everett Facility, under the MA SIP and the MA Regulations.

64.     The MA SIP and the MA Regulations required Sprague to apply for and obtain a Plan Approval from MassDEP before its construction, substantial reconstruction, or alteration of the Everett Facility in 2002.

65.     In 2002, Sprague commenced its asphalt storage and transfer operations at the Everett Facility.

66.     Sprague has continued its asphalt storage and transfer operations at the Everett Facility from 2002 through the present.

67.     The MA Regulations prohibited Sprague from operating the Everett Facility after 2002 without a Plan Approval.  310 C.M.R. 7.02(1)(b), 7.02(3)(a).  To date, Sprague has not applied for or obtained a Plan Approval from MassDEP for the Everett Facility.

68.     To date, at the Everett Facility, Sprague has not complied with applicable VOC emission limitations, under the MA SIP, 310 C.M.R. 7.02(2)(a)(6), and the MA Regulations, 310 C.M.R. 7.02(3)(a) and 310 C.M.R. 7.02(8)(a)(2).

69.     In source registration forms filed with MassDEP between 2002 and 2016, Sprague inaccurately reported potential VOC emissions from the Everett Facility of 0 to 0.5 tons per year.

70.     On March 13, 2015, EPA issued a Notice of Violation to Sprague regarding the Everett Facility.  The Notice of Violation alleged, among other things, that Sprague failed to seek or obtain a Plan Approval from MassDEP for Sprague's construction, substantial reconstruction, or alteration of the Everett Facility and that Sprague failed to implement applicable VOC emission limitations at the Everett Facility, in violation of the MA SIP.

Quincy Facility

71.     The Quincy Facility is a bulk No. 6 oil storage and distribution facility located in Quincy, Massachusetts.

72.     At the Quincy Facility, No. 6 oil is transferred from marine vessels into a storage tank ("Quincy No. 6 Oil Tank").

73.     Number 6 oil is solid or semi-solid at ambient temperatures and must be heated in order to become liquid enough to be transferred to or from the Quincy No. 6 Oil Tank, through pipes, from or to marine vessels, or to truck loading racks and from there to tanker trucks, for shipment off-site.

74.     The Quincy No. 6 Oil Tank is heated to temperatures above ambient levels, in order to maintain the No. 6 oil in a liquid state.

75.     The process of heating No. 6 oil to temperatures above ambient levels, high enough to maintain the oil in a liquid state, causes VOC emissions to the ambient air.

76.     To deliver No. 6 oil from the Quincy Facility to its customers, Sprague typically transfers No. 6 oil from the Quincy No. 6 Oil Tank, through piping and a truck loading rack, to tanker trucks, for delivery off-site.

77.     Sprague purchased the Quincy Facility in 1995.

78.     In 1995, Sprague converted a preexisting tank into the Quincy No. 6 Oil Tank by installing a heat exchanger and making piping improvements.

79.     In 1998, Sprague installed an oil loading rack at the Quincy Facility to support the loading of No. 6 oil into trucks.

80.     In 2010, Sprague reinsulated and made repairs to the Quincy No. 6 Oil Tank (a/k/a Tank 11).

81.     The Quincy Facility is a "facility" under the MA SIP and the MA Regulations.

82.     Through its activities at the Quincy Facility, from 1995 through 2010, Sprague constructed, substantially reconstructed, or altered the Quincy Facility without applying for or obtaining a Plan Approval from MassDEP.

83.     The MA SIP and the MA Regulations required Sprague to apply for and obtain a Plan Approval from MassDEP before its construction, substantial reconstruction, or alteration of the Quincy Facility beginning in 1995.

84.     Sprague has continued its No. 6 oil storage and distribution operations at the Quincy Facility from 1995 through the present.

85.     The MA Regulations prohibited Sprague from operating the Quincy Facility after 1995 without a Plan Approval for the Quincy Facility.

86.     To date, Sprague has not applied for or obtained a Plan Approval from MassDEP for the Quincy Facility.

87.     To date, Sprague has not implemented VOC emission limitations at the Quincy Facility.

88.     In source registration forms filed with MassDEP between 2000 and 2015, Sprague inaccurately reported potential VOC emissions from the Quincy Facility of 2 to 12.3 tons per year.

89.     On March 16, 2017, EPA issued a Notice of Violation to Sprague for its failure to seek or obtain Plan Approval from MassDEP in connection with its construction, substantial reconstruction, or alteration of the Quincy Facility, and for its failure to implement VOC emission limitations at the facility, in accordance with the MA SIP.

Searsport Facility

90.     The Searsport Facility is a bulk No. 6 oil and asphalt storage and distribution facility located in Searsport, Maine.

91.    The Searsport Facility stores and distributes No. 6 oil and asphalt.

92.    At all times relevant to this Complaint, Sprague has owned and operated the Searsport Facility.

93.    At the Searsport Facility, asphalt is transferred from marine vessels into two asphalt tanks for storage on site (the "Searsport Asphalt Tanks").

94.    To deliver asphalt from the Searsport Facility to its customers, Sprague typically transfers asphalt from the Searsport Asphalt Tanks, through piping and a truck loading rack, to tanker trucks for delivery off-site.

95.    The Searsport Asphalt Tanks are heated to store asphalt at temperatures far higher than ambient air.  Asphalt must be heated to such temperatures for it to be sufficiently liquid to be properly transferred into or out of the Searsport Asphalt Tanks, through pipes, from or to marine vessels, or to truck loading racks and there to tanker trucks, for shipment off-site.

96.    The process of heating the asphalt and maintaining it at temperatures above ambient temperatures causes VOC emissions to the ambient air.

97.    At the Searsport Facility, No. 6 oil is transferred from marine vessels into two No. 6 oil tanks for storage on site (the "Searsport No. 6 Oil Tanks").

98.    To deliver No. 6 oil from the Searsport Facility to its customers, Sprague typically transfers No. 6 oil from the Searsport No. 6 Oil Tanks, through piping and a truck loading rack, to tanker trucks, for delivery off-site.

99.    Number 6 oil is solid or semi-solid at ambient temperatures and must be heated in order to become liquid enough to be transferred to or from the Searsport No. 6 Oil Tanks, through pipes, from or to marine vessels, or to truck loading racks and from there to tanker trucks, for shipment offsite.

100.     The Searsport No. 6 Oil Tanks are heated to temperatures above ambient levels, in order to maintain the oil in a liquid state.

101.     The process of heating No. 6 oil to temperatures above ambient levels, high enough to maintain the oil in a liquid state, causes VOC emissions to the ambient air.

102.     The ME SIP prohibits the emission of any air contaminant, including VOCs, from any source without an air emission license unless the source is exempt.

103.     The Searsport Facility is not exempt from licensing under the ME SIP.  The Searsport Facility has an air emissions license issued by the Maine Department of Environment Protection ("ME DEP") on May 21, 2013, and amended on July 21, 2015.

104.     Until its amendment on July 21, 2015, the Searsport air emissions license did not address VOC emissions from the storage and distribution of No. 6 oil and asphalt.

105.     Under the ME SIP, because Sprague emits VOCs from No. 6 oil and asphalt at the Searsport Facility, it was required to obtain from ME DEP an air emissions license addressing the No. 6 oil and asphalt storage and distribution activities at the Searsport Facility.  Under the ME SIP, such a license must require adequate limitations on VOC emissions at the Searsport Facility.

106.     Until July 21, 2015, Sprague had not obtained from ME DEP a license to emit VOCs in connection with the storage and distribution of No. 6 oil and asphalt at the Searsport Facility.

107.     On April 16, 2014, EPA issued a Notice of Violation to Sprague regarding the Searsport Facility.  The Notice of Violation alleged, among other things, that Sprague violated the ME SIP by failing to seek or obtain from ME DEP a license permitting VOC emissions from the Searsport Asphalt Tanks and Searsport No. 6 Oil Tanks, and failing to adequately address VOC emissions at the Searsport Facility.

South Portland Facility

108.    The South Portland Facility is a bulk No. 6 oil and asphalt storage and distribution facility located in South Portland, Maine.

109.    The South Portland Facility stores and distributes No. 6 oil and asphalt.

110.    At all times relevant to this Complaint, Sprague has owned and operated the South Portland Facility.

111.    At the South Portland Facility, asphalt is transferred from marine vessels into asphalt tanks for storage on site (the "South Portland Asphalt Tanks").

112.    To deliver asphalt from the South Portland Facility to its customers, Sprague typically transfers asphalt from the South Portland Asphalt Tanks, through piping and a truck loading rack, to tanker trucks for delivery off-site.

113.    The South Portland Asphalt Tanks are heated to store asphalt at temperatures far higher than ambient air.  Asphalt must be heated to such temperatures for it to be sufficiently liquid to be properly transferred into or out of the South Portland Asphalt Tanks, through pipes, from or to marine vessels, or to truck loading racks and from there to tanker trucks, for shipment off-site.

114.    The process of heating the asphalt and maintaining it at temperatures above ambient temperatures causes VOC emissions to the ambient air.

115.    At the South Portland Facility, No. 6 oil is or has been transferred from marine vessels into No. 6 oil tanks for storage on site (the "South Portland No. 6 Oil Tanks").

116.    To deliver No. 6 oil from the South Portland Facility to its customers, Sprague typically transfers No. 6 oil from the South Portland No. 6 Oil Tanks, through piping and a truck loading rack, to tanker trucks, for delivery off-site.

117.     Number 6 oil is solid or semi-solid at ambient temperatures and must be heated in order to become liquid enough to be transferred to or from the South Portland No. 6 Oil Tanks, through pipes, from or to marine vessels, or to truck loading racks and from there to tanker trucks, for shipment offsite,

118.     The South Portland No. 6 Oil Tanks are or have been heated to temperatures above ambient levels, in order to maintain the oil in a liquid state.

119.     The process of heating No. 6 oil to temperatures above ambient levels, high enough to maintain the oil in a liquid state, causes VOC emissions to the ambient air.

120.     The ME SIP prohibits the emission of any air contaminant, including VOCs, from any source without an air emission license unless the source is exempt.

121.     The South Portland Facility is not exempt from licensing under the ME SIP.

122.     The South Portland Facility has an air emissions license issued by ME DEP on May 21, 2013, and amended on July 21, 2015.

123.     Until it was amended on July 21, 2015, the South Portland Facility's air emissions license did not address VOC emissions from the storage and distribution of No. 6 oil and asphalt.

124.     Under the ME SIP, Sprague was required to obtain from ME DEP an air emissions license addressing the No. 6 oil and asphalt storage and distribution activities at the South Portland Facility.  Under the ME SIP, such a license must require that Sprague adequately address VOC emissions at the South Portland Facility.

125.     Before July 21, 2015, Sprague had not obtained from ME DEP a license to emit VOCs in connection with the storage and distribution of No. 6 oil and asphalt at the South Portland Facility.

126.     In or around 2000, Sprague performed maintenance on the South Portland Facility's asphalt system piping, blend system, and loading racks.

127.    In or around 2001, Sprague converted one of the South Portland Asphalt Tanks ("Tank 9") from distillate to asphalt storage, including insulating the tank and installing coils.

128.    In or around 2004, Sprague replaced a section of asphalt dockline at the South Portland Facility to restore pumping efficiency.

129.    In or around 2006, Sprague installed an asphalt blender at the South Portland Facility to improve blending capability and restore efficiency, and reconfigured piping to meet product movement requirements.

130.    In or around 2007, Sprague converted one of the South Portland No. 6 Oil Tanks ("Tank 7") from distillate to residual oil by insulating the tank, installing coils, and installing a steam generator.

131.    Under the ME SIP at Chapter 115, Section II.B, no person shall commence construction of any source or modify an existing source without a license unless the source is exempted under Section II.C.  Such a license, or license modifications, also must establish emission limitations.  *See* Chapter 115, Section VI.B(1).

132.    The South Portland Facility, including the South Portland Asphalt Tanks and South Portland No. 6 Oil Tanks, is not exempt from the air emissions licensing requirements set forth in the ME SIP at Chapter 115, Section II.C.

133.    Before constructing the modifications to the South Portland Facility, as specified in Paragraphs 126-130 above, Sprague failed to apply for and obtain from ME DEP license amendments addressing such modifications and emissions limitations from the facility.

134.    To date, Sprague has not applied for and obtained from ME DEP license amendments for the modifications to the South Portland Facility.

135.    To date, Sprague has not adequately addressed emissions limitations at the South Portland Facility.

136.    On April 16, 2014, EPA issued a Notice of Violation to Sprague regarding the South Portland Facility.  The Notice of Violation alleged, among other things, that Sprague violated the ME SIP by failing to seek or obtain from ME DEP a license permitting VOC emissions from the South Portland Asphalt Tanks and South Portland No. 6 Oil Tanks, and failing to demonstrate that VOC emissions are adequately addressed at the South Portland Facility.

137.    On December 11, 2014, EPA issued a Notice of Violation to Sprague regarding the South Portland Facility, supplementing the April 16, 2014 Notice of Violation.  The December 11, 2014 Notice of Violation alleged, among other things, that Sprague had violated the ME SIP by conducting modifications at the South Portland Facility without air emissions license amendments, and by failing to demonstrate that it had adequately limited emissions at the facility.

Newington Facility

138.    The Newington Facility is a bulk No. 6 oil storage and distribution facility located in Newington, New Hampshire.

139.    At the Newington Facility, No. 6 oil is transferred from marine vessels into four storage tanks (the "Newington No. 6 Oil Tanks").

140.    Number 6 oil is solid or semi-solid at ambient temperatures and must be heated in order to become liquid enough to be transferred to or from the Newington No. 6 Oil Tanks, through pipes, from or to marine vessels, or to truck loading racks, and from there to tanker trucks, for shipment off-site.

141.    The Newington No. 6 Oil Tanks are heated to temperatures above ambient levels, in order to maintain the No. 6 oil in a liquid state.

142.    The process of heating No. 6 oil to temperatures above ambient levels, high enough to maintain the oil in a liquid state, causes VOC emissions to the ambient air.

143.    To deliver No. 6 oil from the Newington Facility to its customers, Sprague typically transfers No. 6 oil from the Newington No. 6 Oil Tanks, through piping and a truck loading rack, to tanker trunks, for delivery off-site.

144.    Prior to 2009, Sprague stored and dispensed asphalt, rather than No. 6 oil, at the Newington Facility.

145.    In or around 2009, Sprague converted its asphalt operations to No. 6 oil.

146.    As a result of Sprague's conversion of the Newington Facility to No. 6 oil in or around 2009, the Newington Facility's potential to emit exceeded 50 tons per year of VOCs.

147.    As the owner and operator of a new major source of VOCs with facility-wide potential to emit greater than or equal to 50 tons per year of VOCs, under the NH SIP, Sprague was required to obtain from NHDES and operate with a temporary permit addressing emissions.

148.    Sprague converted the Newington Facility to No. 6 oil without first applying for and obtaining from NHDES a temporary permit under the NH SIP.  *See* Env-A 602.01, 603.01, and 603.03.

149.    Sprague did not obtain from NHDES a temporary permit under the NH SIP addressing emissions before converting the Newington Facility to No. 6 oil, as required by the NH SIP.

150.    On March 17, 2015, EPA issued a Notice of Violation to Sprague regarding the Newington Facility.  This Notice of Violation alleged, among other things, that Sprague violated the NH SIP by (a) converting asphalt storage tanks to No. 6 oil storage tanks without obtaining a temporary permit, under Env-A 602.01, 603.01, and 603.03, addressing emissions under Env-A 610.04; (b) owning and operating a new major stationary source without obtaining or operating

in accordance with an operating permit, under Env-A 602.02, 603.01, and 603.03, addressing

emissions under Env-A 610.04; (c) owning and operating a miscellaneous stationary VOC

source with combined potential VOC emissions above 50 tons per consecutive 12-month period

without adequately addressing emissions, under Env-A 1222.02; and (d) owning and operating a

facility that is and has been a "major source," under 40 C.F.R. § 70.2, without timely applying

for a Title V operating permit under Sections 502(a) and 503(c) of the CAA and 40 C.F.R.

§§ 70.5 and 70.7(b).

<u>Providence Facility</u>

151.   The Providence Facility is a bulk No. 6 oil and asphalt storage and distribution

facility located in Providence, Rhode Island.

152.   The Providence Facility stores and distributes, or has stored and distributed, No. 6

oil and asphalt.

153.   At all times relevant to this Complaint, Sprague has owned and operated the

Providence Facility.

154.   At the Providence Facility, asphalt is transferred from marine vessels into asphalt

tanks for storage on site ("Asphalt Tanks").

155.   To deliver asphalt from the Providence Facility to its customers, Sprague typically

transfers asphalt from Asphalt Tanks, through piping and a truck loading rack, to tanker trucks

for delivery off-site.

156.   The Asphalt Tanks are heated to store asphalt at temperatures far higher than

ambient air.  Asphalt must be heated to such temperatures for it to be sufficiently liquid to be

properly transferred into or out of the Asphalt Tanks, through pipes, from or to marine vessels, or

to truck loading racks and from there to tanker trucks, for shipment off-site.

157.    The process of heating the asphalt and maintaining it at temperatures above ambient temperatures causes VOC emissions to the ambient air.

158.    At the Providence Facility, No. 6 oil is or has been transferred from marine vessels into an oil tank ("Tank 6") for storage on site.

159.    To deliver No. 6 oil from the Providence Facility to its customers, Sprague typically has transferred No. 6 oil from Tank 6, through piping and a truck loading rack, to tanker trucks, for delivery off-site.

160.    Number 6 oil is solid or semi-solid at ambient temperatures and must be heated in order to become liquid enough to be transferred to or from Tank 6, through pipes, from or to marine vessels, or to truck loading racks and from there to tanker trucks, for shipment offsite,

161.     Tank 6 is or has been heated to temperatures above ambient levels, in order to maintain the oil in a liquid state.

162.    The process of heating No. 6 oil to temperatures above ambient levels, high enough to maintain the oil in a liquid state, causes VOC emissions to the ambient air.

163.    Sprague acquired ownership of the Providence Facility in or around 1995.

164.    At the time that Sprague acquired the Providence Facility in or around 1995, the Providence Facility included, among other things, Tank 5 and Tank 6.

165.    In or about 1995, Sprague converted Tank 5 to the storage of asphalt by installing insulation and hot oil coils.

166.    In 2006 and 2007, Sprague made improvements to its No. 6 oil operation at the Providence Facility, including upgrading the loading rack and repairing and reinsulating Tank 6.

167.     Sprague constructed, installed, and modified its Providence Facility in or about 1995, without applying for a permit from RIDEM as required.

24

168.     Sprague constructed, installed, and modified its Providence Facility in 2006 and 2007, without applying for a permit from RIDEM as required.

169.     To date, Sprague has not applied for or obtained from RIDEM a permit under the RI SIP for Tank 5, in connection with its construction and modification of the Providence Facility in 1995.

170.     To date, Sprague has not applied for or obtained from RIDEM a permit under the RI SIP for Tank 6, in connection with its construction and modification of the Providence Facility in 2006 and 2007.

171.     To date, Sprague has not adequately limited VOC emissions at the Providence Facility.

172.     On June 14, 2017, EPA issued a Notice of Violation to Sprague regarding the Providence Facility.  This Notice of Violation alleges, among other things, that Sprague violated the RI SIP by constructing, installing, and modifying the Providence Facility without (a) applying for or obtaining a permit from RIDEM for No. 6 oil and asphalt storage and distribution, or (b) adequately limiting VOC emissions, at the facility, under RI APC Regulation 9.3.

## FIRST CLAIM FOR RELIEF

(Joint Claim by United States and Commonwealth for Violation of MA SIP and MA Regulations at Everett Facility for Re-Activating a Shut-Down Facility Without Applying for and Obtaining MassDEP Plan Approval)

173.     All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

174.     At all relevant times, Sprague and the Everett Facility were subject to the MA SIP, including 310 C.M.R. 7.02(2)(a), and the MA Regulations, including 310 C.M.R. 7.02(3)(a) and 310 C.M.R. 7.02(8)(a)(2).

175.     The MA SIP, 310 C.M.R. 7.02(2)(a), and the MA Regulations, 310 C.M.R. 7.02(3)(a), 310 C.M.R. 7.02(3)(m), and 310 C.M.R. 7.02(8)(a)(2), prohibited Sprague from constructing, substantially reconstructing, or altering the Everett Facility without first applying for and obtaining a Plan Approval addressing VOC emissions from MassDEP.

176.     Sprague's reactivation of the Everett Facility starting in 2002, after approximately four years of permanent shutdown, constituted construction, substantial reconstruction, or alteration of the facility, under the MA SIP and the MA Regulations.

177.     At all relevant times, Sprague (a) did not submit an application to MassDEP for a Plan Approval for the construction, substantial reconstruction, or alteration of the Everett Facility in connection with the re-activation of the Everett Facility and, consequently, (b) failed to obtain from MassDEP a Plan Approval for the Everett Facility's re-activation.

178.     At all relevant times, Sprague violated the MA SIP and the MA Regulations by failing (a) to submit an application to MassDEP for a Plan Approval for the construction, substantial reconstruction, or alteration of the Everett Facility in connection with the re-activation of the Everett Facility, and (b) to obtain from MassDEP a Plan Approval for the Everett Facility's reactivation.

179.     Sprague is liable to the United States for injunctive relief, under Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), and to the Commonwealth under the Massachusetts Act for injunctive relief and for a civil penalty of up to $25,000 for each violation day, for Sprague's failure to apply for and obtain a Plan Approval for the Everett Facility's re-activation.

## SECOND CLAIM FOR RELIEF

(Joint Claim by United States and Commonwealth for Violation of MA SIP and MA Regulations for Constructing, Substantially Reconstructing, or Altering Everett Facility Without Applying for and Obtaining MassDEP Plan Approval)

180.    All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

181.    At all relevant times, Sprague and the Everett Facility were subject to the MA SIP, including 310 C.M.R. 7.02(2)(a), and the MA Regulations, including 310 C.M.R. 7.02(1)(b), 310 C.M.R. 7.02(3)(a), and 310 C.M.R. 7.02(8)(a)(2).

182.    The MA SIP, 310 C.M.R. 7.02(2)(a), and the MA Regulations, 310 C.M.R. 7.02(1)(b),310 C.M.R. 7.02(3)(a), and 310 C.M.R. 7.02(8)(a)(2) prohibited Sprague from constructing, substantially reconstructing, or altering the Everett Facility without first applying for and obtaining from MassDEP a Plan Approval addressing VOC emissions.

183.    Through its activities at the Everett Facility in 2002, and its construction of a new heat plant and building at the Everett Facility, Sprague constructed, substantially reconstructed, or altered the Everett Facility without applying for or obtaining a Plan Approval from MassDEP.

184.    At all relevant times, Sprague (a) failed to submit an application to MassDEP for a Plan Approval for the construction, substantial reconstruction, or alteration of the Everett Facility in connection with the activities at the Everett Facility in 2002, or with the construction of the new heat plant and building at the Everett Facility, and consequently, (b) failed to obtain from MassDEP a Plan Approval for such activities.

185.    At all relevant times, Sprague violated the MA SIP and the MA Regulations by failing (a) to submit an application to MassDEP for a Plan Approval for the construction, substantial reconstruction, or alteration of the Everett Facility in connection with its activities at

27

the Everett Facility in 2002, or with the construction of the new heat plant and building at the Everett Facility, and (b) to obtain from MassDEP a Plan Approval for such activities.

186.     Sprague is liable to the United States for injunctive relief, under Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), and to the Commonwealth under the Massachusetts Act for injunctive relief and for a civil penalty of up to $25,000 for each violation day, for Sprague's failure to apply for and obtain from MassDEP a Plan Approval in connection with its activities at the Everett Facility in 2002, or with the construction of the new heat plant and building at the Everett Facility.

## THIRD CLAIM FOR RELIEF

(Claim by Commonwealth for Violation of MA Regulations for Operating Everett Facility Without Holding MassDEP Plan Approval)

187.     All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

188.     At all relevant times, Sprague and the Everett Facility were subject to the MA Regulations, including 310 C.M.R. 7.02(1)(b) and 310 C.M.R. 7.02(3)(a).

189.     The MA Regulations prohibited Sprague from operating the Everett Facility subsequent to its reactivation, construction, substantial reconstruction, or alteration of the Everett Facility without holding a Plan Approval from MassDEP, under 310 C.M.R. 7.02(1)(b) and 310 C.M.R. 7.02(3)(a).

190.     Sprague has never held a Plan Approval from MassDEP for the Everett Facility.

191.     Continuously from 2002 to the present, Sprague has violated and continues to violate the MA Regulations every day it has operated the Everett Facility.

192.     Unless Sprague is otherwise ordered by this Court, the violations alleged in this Claim for Relief will likely continue.

193.    As provided in the Massachusetts Act, Sprague is liable to the Commonwealth for injunctive relief, and for a civil penalty of up to $25,000 for each day it has operated the Everett Facility without holding a MassDEP Plan Approval since its construction, substantial reconstruction, or alteration of the Everett Facility in 2002.

## FOURTH CLAIM FOR RELIEF

(Claim by Commonwealth for Violation of MA Regulations at Everett Facility for Creating a Condition of Air Pollution)

194.    All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

195.    At all relevant times, Sprague and the Everett Facility were subject to the MA Regulations, including 310 C.M.R. 7.01(1).

196.    Pursuant to the MA Regulations, 310 C.M.R. 7.01(1), no person owning, leasing, or controlling the operation of any air contamination source shall willfully, negligently, or through failure to provide necessary equipment or to take necessary precautions, permit the emission of such quantities of air contaminants which will cause, by themselves or in conjunction with other air contaminants, a condition of air pollution.

197.    The Everett Facility is an "air contamination source" within the meaning of the MA Regulations.

198.    Under the MA Regulations, "air pollution" means the presence in the ambient air space of one or more air contaminants or combinations thereof in such concentrations and of such duration as to cause a nuisance; be injurious, or be on the basis of current information, potentially injurious to human or animal life, to vegetation, or to property; or unreasonably interfere with the comfortable enjoyment of life and property or the conduct of business. 310 C.M.R. 7.00 (definition of "air pollution").

199.     Sprague's unlawful VOC emissions from the Everett Facility caused, in conjunction with other air contaminants, a condition of air pollution in violation of 310 C.M.R. 7.01(1).

200.     Unless Sprague is otherwise ordered by this Court, the violations alleged in this Claim for Relief will likely continue.

201.     As provided in the Massachusetts Act, Sprague is liable to the Commonwealth for injunctive relief, and for a civil penalty of up to $25,000 per violation day, for emitting air contaminants from the Everett Facility that caused or contributed to a condition of air pollution.

## FIFTH CLAIM FOR RELIEF

(Claim by Commonwealth for Violation of MA Regulations at Everett Facility for Filing Inaccurate Source Registration Statements)

202.     All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

203.     At all relevant times, Sprague and the Everett Facility were subject to the MA Regulations, including 310 C.M.R. 7.01(2)(a).

204.     Between 2002 and 2016, Sprague filed source registration forms with MassDEP pursuant to 310 C.M.R. 7.12 that inaccurately reported potential VOC emissions from the Everett Facility of 0 to 0.5 tons per year.

205.     By inaccurately reporting potential VOC emissions to MassDEP, Sprague violated the MA Regulations, 310 C.M.R. 7.01(2)(a).

206.     Unless Sprague is otherwise ordered by this Court, the violations alleged in this Claim for Relief will likely continue.

207.    As provided in the Massachusetts Act, Sprague is liable to the Commonwealth for injunctive relief, and for a civil penalty of up to $25,000 for each violation day, for making inaccurate statements in the source registration forms Sprague submitted to MassDEP.

## SIXTH CLAIM FOR RELIEF

(Joint Claim by United States and the Commonwealth for Violation of MA SIP and MA Regulations for Constructing, Substantially Reconstructing, or Altering Quincy Facility Without Applying for and Obtaining MassDEP Plan Approval)

208.    All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

209.    At all relevant times, Sprague and the Quincy Facility were subject to the MA SIP, including 310 C.M.R. 7.02(2)(a), and the MA Regulations, including 310 C.M.R. 7.02(1)(b), 310 C.M.R. 7.02(3)(a), and 310 C.M.R. 7.02(8)(a)(2).

210.    The MA SIP, 310 C.M.R. 7.02(2)(a), and the MA Regulations, 310 C.M.R. 7.02(1)(b) and 310 C.M.R. 7.02(3)(a), prohibited Sprague from constructing, substantially reconstructing, or altering the Quincy Facility without first applying for and obtaining a Plan Approval addressing VOC emissions from MassDEP.

211.    Through its activities at the Quincy Facility, from 1995 through 2010, Sprague constructed, substantially reconstructed, or altered the Quincy Facility without applying for or obtaining from MassDEP a Plan Approval addressing VOC emissions.

212.    At all relevant times, Sprague (a) failed to submit an application to MassDEP for a Plan Approval for the construction, substantial reconstruction, or alteration of the Quincy Facility, and (b) failed to obtain from MassDEP a Plan Approval for such activities.

213.    At all relevant times, Sprague has violated the MA SIP and the MA Regulations by (a) failing to submit an application to MassDEP for a Plan Approval for the construction,

substantial reconstruction, or alteration of the Quincy Facility, and consequently (b) failing to obtain from MassDEP a Plan Approval for such activities.

214.     Sprague is liable to the United States for injunctive relief, under Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), and to the Commonwealth under the Massachusetts Act for injunctive relief and for a civil penalty of up to $25,000 for each violation day, for Sprague's failure to apply for and obtain a Plan Approval in connection with its activities at the Quincy Facility since 1995.

## SEVENTH CLAIM FOR RELIEF

### (Claim by the Commonwealth for Violation of MA Regulations for Operating Quincy Facility Without Holding MassDEP Plan Approval)

215.     All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

216.     At all relevant times, Sprague and the Quincy Facility were subject to the MA Regulations, including 310 C.M.R. 7.02(1)(b) and 310 C.M.R. 7.02(3)(a).

217.     The MA Regulations prohibited Sprague from operating the Quincy Facility subsequent to its construction, substantial reconstruction, or alteration of the Quincy Facility without holding a Plan Approval from MassDEP, under 310 C.M.R. 7.02(1)(b) and 310 C.M.R. 7.02(3)(a).

218.     Sprague has never held a Plan Approval from MassDEP for the Quincy Facility.

219.     Continuously since 1995 to the present, Sprague has violated and continues to violate the MA Regulations every day it has operated the Quincy Facility.

220.     Unless Sprague is otherwise ordered by this Court, the violations alleged in this Claim for Relief will likely continue.

221.     As provided in the Massachusetts Act, Sprague is liable to the Commonwealth for injunctive relief, and for a civil penalty of up to $25,000 for each violation day, for Sprague's operation of the Quincy Facility without a Plan Approval since its construction, substantial reconstruction, or alteration of the Quincy Facility beginning in 1995.

## EIGHTH CLAIM FOR RELIEF

(Claim by Commonwealth for Violation of MA Regulations at Quincy Facility for Creating a Condition of Air Pollution)

222.     All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

223.     At all relevant times, Sprague and the Quincy Facility were subject to the MA Regulations, including 310 C.M.R. 7.01(1).

224.     The Quincy Facility is an "air contamination source" within the meaning of the MA Regulations.

225.     Sprague's unlawful VOC emissions from the Quincy Facility caused, in conjunction with other air contaminants, a condition of air pollution in violation of 310 C.M.R. 7.01(1).

226.     Unless Sprague is otherwise ordered by this Court, the violations alleged in this Claim for Relief will likely continue.

227.     As provided in the Massachusetts Act, Sprague is liable to the Commonwealth for injunctive relief, and for a civil penalty of up to $25,000 for each violation, for emitting air contaminants from the Quincy Facility that caused or contributed to a condition of air pollution.

### NINTH CLAIM FOR RELIEF

(Claim by the Commonwealth for Violation of MA Regulations at Quincy Facility for
Filing Inaccurate Source Registration Statements)

228.   All other paragraphs of this Complaint are incorporated by reference as if set forth
fully herein.

229.   At all relevant times, Sprague and the Quincy Facility were subject to the MA
Regulations, including 310 C.M.R. 7.012)(a).

230.   Between 2000 and 2015, Sprague filed source registration forms with MassDEP
pursuant to 310 C.M.R. 7.12 that inaccurately reported potential VOC emissions from the
Quincy Facility of 2 to 12.3 tons per year.

231.   By inaccurately reporting potential VOC emissions to MassDEP, Sprague
violated the MA Regulations, 310 C.M.R. 7.01(2)(a).

232.   Unless Sprague is otherwise ordered by this Court, the violations alleged in this
Claim for Relief will likely continue.

233.   As provided in the Massachusetts Act, Sprague is liable to the Commonwealth for
injunctive relief, and for a civil penalty of up to $25,000, for each inaccurate statement in the
source registration forms Sprague submitted to MassDEP.

### TENTH CLAIM FOR RELIEF

(Claim by United States regarding Searsport Facility –
Failure to Obtain Emissions License (ME SIP Chapter 115))

234.   All other paragraphs of this Complaint are incorporated by reference as if set forth
fully herein.

235.   The Searsport Facility is a stationary source of VOCs.

236.    At all relevant times, Sprague was required to obtain from ME DEP an Emissions License accounting for VOC emissions from all of its No. 6 oil and asphalt storage and distribution activities at the Searsport Facility, but failed to do so.

237.    At all relevant times, Sprague violated Chapter 115, §II.C, of the ME SIP by failing to obtain a license accounting for VOC emissions from all No. 6 oil and asphalt storage and distribution activities at the Searsport Facility.

238.    As provided in Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), and in accordance with the Debt Collection Improvement Act of 1996, 31 U.S.C. §§ 3701-3720E, and EPA's Civil Monetary Inflation Adjustment Rule, 40 C.F.R. Part 19, Sprague is liable to the United States for the payment of a civil penalty of up to $37,500 per day for each violation occurring after January 12, 2009 through November 2, 2015; and up to $101,439 per day for each violation occurring after November 2, 2015 and assessed on or after January 13, 2020. Sprague is also liable to the United States for injunctive relief, under Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), for the violations alleged in this claim for relief.

## ELEVENTH CLAIM FOR RELIEF

(Claim by United States regarding Searsport Facility –
Failure to Adequately Address VOC Emissions (ME SIP Chapter 115))

239.    All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

240.    The Searsport Facility is a stationary source of VOCs.

241.    Sprague was required to obtain from ME DEP an Emissions License requiring the company to meet an appropriate VOC emission standard for all No. 6 oil and asphalt storage and distribution activities at the Searsport Facility, but failed to do so.

242.    Sprague violated Chapter 115, § V.A.2.a of the ME SIP every day that it failed to meet an appropriate VOC emission standard for its No. 6 oil and asphalt storage and distribution activities at the Searsport Facility.

243.    Unless Sprague is otherwise ordered by this Court, the violations alleged in this Claim for Relief will likely continue.

244.    As provided in Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), and in accordance with the Debt Collection Improvement Act of 1996, 31 U.S.C. §§ 3701-3720E, and EPA's Civil Monetary Inflation Adjustment Rule, 40 C.F.R. Part 19, Sprague is liable to the United States for the payment of a civil penalty of up to $37,500 per day for each violation occurring after January 12, 2009 through November 2, 2015; and up to $101,439 per day for each violation occurring after November 2, 2015 and assessed on or after January 13, 2020. Sprague is also liable to the United States for injunctive relief, under Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), for the violations alleged in this claim for relief.

## TWELTH CLAIM FOR RELIEF

(Claim by United States regarding South Portland Facility –
Failure to Obtain Emissions License (ME SIP Chapter 115))

245.    All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

246.    The South Portland Facility is a stationary source of VOCs.

247.    Sprague was required to obtain from ME DEP an Emissions License accounting for VOC emissions from all of its asphalt and No. 6 oil storage and distribution activities at the South Portland Facility, but failed to do so.

248.     Sprague violated Chapter 115, § II.B, of the ME SIP every day that it failed to obtain a license accounting for VOC emissions from all asphalt and No. 6 oil storage and distribution activities at the South Portland Facility.

249.     Unless Sprague is otherwise ordered by this Court, the violations alleged in this Claim for Relief will likely continue.

250.     As provided in Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), and in accordance with the Debt Collection Improvement Act of 1996, 31 U.S.C. §§ 3701-3720E, and EPA's Civil Monetary Inflation Adjustment Rule, 40 C.F.R. Part 19, Sprague is liable to the United States for the payment of a civil penalty of up to $37,500 per day for each violation occurring after January 12, 2009 through November 2, 2015; and up to $101,439 per day for each violation occurring after November 2, 2015 and assessed on or after January 13, 2020. Sprague is also liable to the United States for injunctive relief, under Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), for the violations alleged in this claim for relief.

### THIRTEENTH CLAIM FOR RELIEF

(Claim by United States regarding South Portland Facility –
Failure to Adequately Address VOC Emissions (ME SIP Chapter 115))

251.     All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

252.     The South Portland Facility is a stationary source of VOCs.

253.     Sprague was required to obtain from ME DEP an Emissions License requiring the company to meet an appropriate VOC emission standard for its No. 6 oil and asphalt storage and distribution activities at the South Portland Facility, but failed to do so.

37

254.     Sprague violated Chapter 15, § V.A.2.a of the ME SIP every day that it failed meet an appropriate VOC emission standard for its No. 6 oil and asphalt storage and distribution activities at the South Portland Facility.

255.     Unless Sprague is otherwise ordered by this Court, the violations alleged in this Claim for Relief will likely continue.

256.     As provided in Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), and in accordance with the Debt Collection Improvement Act of 1996, 31 U.S.C. §§ 3701-3720E, and EPA's Civil Monetary Inflation Adjustment Rule, 40 C.F.R. Part 19, Sprague is liable to the United States for the payment of a civil penalty of up to $37,500 per day for each violation occurring after January 12, 2009 through November 2, 2015; and up to $101,439 per day for each violation occurring after November 2, 2015 and assessed on or after January 13, 2020. Sprague is also liable to the United States for injunctive relief, under Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), for the violations alleged in this claim for relief.

## FOURTEENTH CLAIM FOR RELIEF

(Claim by United States Regarding South Portland Facility for Commencing Construction of Modifications without an Air Emissions License (ME SIP Chapter 115))

257.     All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

258.     At all relevant times, Sprague and the South Portland Facility were subject to the ME SIP.

259.     The ME SIP, Chapter 115, §§II.B and VI.B.1, prohibited Sprague from commencing construction of any source or modifying an existing source without a license, or license amendment addressing VOC emissions, unless the source is exempt under ME SIP, Chapter 115, Section II.C.

260.    The South Portland Facility is not exempt under ME SIP from the requirement to obtain from ME DEP a license, or license amendment, before commencing construction of any source or modifying an existing source.  ME SIP, Chapter 115, Section II.C.

261.    Through its activities beginning in or around 2000 to modify the South Portland Facility, including Sprague's maintenance in or around 2000 of the South Portland Facility's asphalt system piping, blend system, and loading racks Sprague's conversion in or around 2001 of Tank 9 to asphalt storage, Sprague's replacement of a section of asphalt dock line in or around 2004, and Sprague's installation of an asphalt blender at the South Portland Facility in or around 2006, Sprague commenced construction of a source or otherwise commenced modification of an existing source without applying for or obtaining a license, or license amendment, from ME DEP.

262.    At all relevant times, Sprague failed to submit an application to ME DEP for an amendment to the South Portland License for the commencement of construction of a source or modification of existing source in connection with the activities at the South Portland Facility beginning in or around 2000, including the maintenance that Sprague performed in or around 2000 on the South Portland Facility's asphalt system piping, blend system, and loading racks, Sprague's conversion in or around 2001 of Tank 9 to asphalt storage, Sprague's replacement of a section of asphalt dockline in or around 2004, and Sprague's installation of an asphalt blender at the South Portland Facility in or around 2006.

263.    At all relevant times, Sprague violated the ME SIP by (a) failing to submit a license amendment application to ME DEP for the commencement of construction of a source or modification of existing source in connection with the activities at the South Portland Facility beginning in or around 2000, and (b) failing to obtain from ME DEP a license amendment for such activities.

39

264.    Sprague is liable to the United States for injunctive relief, under Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), for the violations alleged in this claim for relief.

### FIFTEENTH CLAIM FOR RELIEF

(Claim by United States Regarding Newington Facility for
Failure to Apply for and Obtain a Temporary Permit)

265.    All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

266.    At all relevant times, Sprague and the Newington Facility were subject to the NH SIP.

267.    By converting its asphalt storage tanks at the Newington Facility to No. 6 oil storage tanks in or around 2009, Sprague constructed a new major stationary source of VOCs.

268.    As a result of Sprague's conversion of the asphalt storage tanks to No. 6 oil storage tanks, the Newington Facility's potential to emit VOCs exceeded 50 tons per year.

269.    As the owner and operator of a new major stationary source of VOCs with facility-wide potential emissions greater than or equal to 50 tons per year of VOCs, Sprague was required to apply for, and operate in accordance with, a temporary permit addressing VOCs, issued by NH DES under Env-A 602.01, 603.01, 603.03, 610.04 (effective through October 25, 2015), and 618.04 (effective October 26, 2015, 80 Fed. Reg. 57722 (Sept. 25, 2015).

270.    Through its activities in or around 2009 at the Newington Facility, Sprague constructed a new major source of VOC emissions without seeking a temporary permit from NH DES to do so.

271.    Continuously from 2009 to the present, Sprague has (a) failed to submit an application to NH DES for a temporary permit for the construction of a new major stationary

source of VOC emissions as required by the NH SIP, and (b) failed to obtain from NH DES such a temporary permit for such construction activities.

272.    Continuously from 2009 to the present, Sprague has violated and continues to violate the NH SIP every day it has (a) failed to submit an application to NH DES for a temporary permit for the construction of a new major stationary source of VOC emissions as required by the NH SIP, and (b) failed to obtain from NH DES such a temporary permit for such construction activities.

273.    Unless Sprague is otherwise ordered by this Court, the violations alleged in this Claim for Relief will likely continue.

274.    Sprague is liable to the United States for injunctive relief, under Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), for the violations alleged in this claim for relief.

## SIXTEENTH CLAIM FOR RELIEF

(Claim by United States Regarding Newington Facility for
Failure to Apply for and Obtain an Operating Permit in Accordance with the NH SIP)

275.    All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

276.    At all relevant times, Sprague and the Newington Facility were subject to the NH SIP.

277.    By converting its asphalt storage tanks at the Newington Facility to No. 6 oil storage tanks in or around 2009, Sprague constructed a new major stationary source of VOCs.

278.    As a result of Sprague's conversion of the asphalt storage tanks to No. 6 oil storage tanks, the Newington Facility's potential to emit VOCs exceeded 50 tons per year

279.    As the owner and operator of a new major stationary source of VOCs with facility-wide potential emissions greater than or equal to 50 tons per year of VOCs, Sprague was

required to apply for and obtain from NH DES an operating permit for the Newington Facility in accordance with the NH SIP.  Env-A 602.02, 603.01, 603.03, 610.04 (effective through October 25, 2015), and 618.04 (effective October 26, 2015, 80 Fed. Reg. 57722 (Sept. 25, 2015)).

280.    Through its activities in or around 2009 at the Newington Facility, Sprague constructed a new major source of VOC emissions without applying for and obtaining from NH DES an operating permit for the Newington Facility in accordance with the NH SIP.

281.    Continuously from 2009 to the present, Sprague has failed to obtain an operating permit for the Newington Facility as a new major stationary source as required by the NH SIP.

282.    Continuously from 2009 to the present, Sprague has violated and continues to violate the NH SIP every day it has failed to apply for and obtain from NH DES an operating permit for the Newington Facility as a new major source as required by the NH SIP.

283.    Unless Sprague is otherwise ordered by this Court, the violations alleged in this Claim for Relief will likely continue.

284.    As provided in Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), and in accordance with the Debt Collection Improvement Act of 1996, 31 U.S.C. §§ 3701-3720E, and EPA's Civil Monetary Inflation Adjustment Rule, 40 C.F.R. Part 19, Sprague is liable to the United States for the payment of a civil penalty of up to $37,500 per day for each violation occurring after January 12, 2009 through November 2, 2015; and up to $101,439 per day for each violation occurring after November 2, 2015 and assessed on or after January 13, 2020. Sprague is also liable to the United States for injunctive relief, under Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), for the violations alleged in this claim for relief.

## SEVENTEENTH CLAIM FOR RELIEF

(Claim by United States Regarding Newington Facility for
Failure to Adequately Address VOC Emissions)

285.    All other paragraphs of this Complaint are incorporated by reference as if set forth

fully herein.

286.    At all relevant times, Sprague and the Newington Facility were subject to the NH

SIP.

287.    As a result of converting the asphalt storage tanks to No. 6 oil tanks at the

Newington Facility in or around 2009, under the NH SIP, the Newington Facility became a

miscellaneous stationary VOC source with combined theoretical potential to emit for all

processes and devices above 50 tons of VOCs per consecutive 12-month period.  *See* Env-A

1222.01(a).

288.    As the owner and operator of a miscellaneous stationary VOC source with a

theoretical potential to emit above 50 tons of VOCs per consecutive 12-month period, Sprague is

required to implement measures to adequately address VOC emissions pursuant to the NH SIP at

the Newington Facility.  *See* Env-A 1222.02.

289.    Continuously from 2009 to the present, Sprague has operated the Newington

Facility without adequately addressing VOC emissions at the facility, as required by the NH SIP.

290.    Continuously from 2009 to the present, Sprague has violated and continues to

violate the NH SIP every day it has failed to implement measures to adequately address VOC

emissions at the Newington Facility, as required by the NH SIP.

291.    Unless Sprague is otherwise ordered by this Court, the violations alleged in this

Claim for Relief will likely continue.

292.    As provided in Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), and in accordance with the Debt Collection Improvement Act of 1996, 31 U.S.C. §§ 3701-3720E, and EPA's Civil Monetary Inflation Adjustment Rule, 40 C.F.R. Part 19, Sprague is liable to the United States for the payment of a civil penalty of up to $37,500 per day for each violation occurring after January 12, 2009 through November 2, 2015; and up to $101,439 per day for each violation occurring after November 2, 2015 and assessed on or after January 13, 2020. Sprague is also liable to the United States for injunctive relief, under Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), for the violations alleged in this claim for relief.

## EIGHTEENTH CLAIM FOR RELIEF

(Claim by United States Regarding Newington Facility for
Failure to Obtain a Title V Operating Permit)

293.    All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

294.    At all relevant times, Sprague and the Newington Facility were subject to the NH SIP.

295.    As a result of converting the asphalt storage tanks to No. 6 oil tanks at the Newington Facility in or around 2009, under the NH SIP, the Newington Facility became a miscellaneous stationary VOC source with combined theoretical potential to emit for all processes and devices above 50 tons of VOCs per consecutive 12-month period. *See* Env-A 1222.01(a).

296.    Under Section 503(c) of the Federal Act, 42 U.S.C. § 7661b(c) and 40 C.F.R. § 70.5, Sprague was required to apply for a Title V operating permit for the Newington Facility that identified all applicable requirements within 12 months of becoming subject to the permit program.

297.     Under Section 502(a) of the Federal Act, 42 U.S.C. § 7661a(a), and 40 C.F.R.

§ 70.7(b), Sprague is prohibited from operating the Facility except in accordance with a Title V

operating permit.

298.     Continuously from 2010, approximately, to the present, Sprague has not applied

for a Title V operating permit for the Facility, in violation of Section 503(c) of the Federal Act,

42 U.S.C. § 7661b(c), and 40 C.F.R. § 70.5.

299.     Continuously from 2010, approximately, to the present, Sprague has owned or

operated the Newington Facility without a Title V operating permit, in violation of Section

502(a) of the Federal Act, 42 U.S.C. § 7661a(a), and 40 C.F.R. § 70.7(b).

300.     Unless Sprague is otherwise ordered by this Court, the violations alleged in this

Claim for Relief will likely continue.

301.     Under Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), as amended by the

DCIA and the Inflation Adjustment Rule, Defendants are liable to the United States for the

payment of a civil penalty of up to $37,500 per day for each violation occurring after January 12,

2009 through November 2, 2015; and up to $101,439 per day for each violation occurring after

November 2, 2015 and assessed on or after January 13, 2020, of Sections 503(c) and 502(a) of

the Federal Act, 42 U.S.C. §§ 7661b(c) and 7661a(a), and 40 C.F.R. §§ 70.5 and 70.7.  Sprague

is also liable to the United States for injunctive relief, under Section 113(b) of the Federal Act,

42 U.S.C. § 7413(b), for the violations alleged in this claim for relief.

## NINETEENTH CLAIM FOR RELIEF

(Claim by United States for Violation of RI SIP for Constructing, Installing, or Modifying the Providence Facility Without Applying for and Obtaining a Permit from RIDEM In Connection with 1995 Tank Conversion)

302.    All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

303.    At all relevant times, Sprague and the Providence Facility were subject to the RI SIP.

304.    Under the RI SIP, Sprague was required to apply for and obtain from RIDEM a permit addressing VOC emissions before constructing, installing, or modifying its Providence Facility.

305.    In or around 1995, Sprague converted Tank 5 to an Asphalt Tank by installing insulation and hot oil coils.

306.    When Sprague converted Tank 5 to asphalt, Sprague constructed, installed, or modified the Providence Facility.

307.    At all relevant times, Sprague has (a) failed to submit an application to RIDEM for a permit in connection with the construction, installation, or modification of the Providence Facility relating to the conversion of Tank 5 to an Asphalt Tank in 1995, and, consequently, (b) failed to obtain a permit from RIDEM for such activities.

308.    At all relevant times, Sprague has violated the RI SIP, RI APC Regulations 9.3.1(g) and 9.3.3 by (a) failing to submit an application to RIDEM for a permit addressing VOC emissions in connection with the construction, installation, or modification of the Providence Facility relating to the conversion of Tank 5 to asphalt in 1995, and consequently and (b) failing to obtain a permit from RIDEM for such activities.

309.    Unless Sprague is otherwise ordered by the Court, the violations alleged in this Claim for Relief will likely continue.

310.    Sprague is liable to the United States for injunctive relief, under Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), for the violations alleged in this claim for relief.

### TWENTIETH CLAIM FOR RELIEF

(Claim by United States for Violation of RI SIP for Constructing, Installing, or Modifying Providence Facility Without Applying for and Obtaining a Permit from RIDEM In Connection with 2006-2007 No. 6 Oil Operation Improvements)

311.    All other paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

312.    At all relevant times, Sprague and the Providence Facility were subject to the RI SIP.

313.    Under the RI SIP, Sprague was required to apply for and obtain a permit from RIDEM for addressing VOC emissions before constructing, installing, or modifying its Providence Facility.

314.    During 2006 and 2007, Sprague made a number of improvements to its No. 6 oil operation at the Providence Facility, including upgrading the loading rack and repairing Tank 6.

315.    By making improvements to its No. 6 oil operation at the Providence Facility through upgrading the loading rack and repairing and reinsulating Tank 6 in 2006 and 2007, Sprague constructed, installed, or modified the Providence Facility.

316.    From 2006 to the present, Sprague has (a) failed to submit an application to RIDEM for a permit in connection with the construction, installation, or modification of the Providence Facility relating to its improvements to the No. 6 oil operation at the Providence Facility, and (b) consequently failed to obtain a permit from RIDEM for such activities.

317. From 2006 to the present, Sprague has violated the RI SIP, RI APC Regulations 9.3.1(g) and 9.3.3, by failing (a) to submit an application to RIDEM for a permit addressing VOC emissions in connection with the construction, installation, or modification of the Providence Facility relating to its improvements to the No. 6 oil operation at the Providence Facility, and (b) consequently to obtain a permit from RIDEM for such activities.

318. Unless Sprague is otherwise ordered by the Court, the violations alleged in this Claim for Relief will likely continue.

319. Sprague is liable to the United States for injunctive relief, under Section 113(b) of the Federal Act, 42 U.S.C. § 7413(b), for the violations alleged in this claim for relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, the United States of America and the Commonwealth of Massachusetts, pray that this Court:

1. Permanently enjoin Sprague from operating the Everett and Quincy Facilities except in accordance with the Federal Act, the MA SIP and the MA Regulations, and other applicable statutory and regulatory requirements;

2. Order Sprague to pay appropriate civil penalties to the Commonwealth for each violation of the MA SIP, the Massachusetts Act, the MA Regulations, and other applicable statutory and regulatory requirements identified in this Complaint, regarding the Everett and Quincy Facilities;

3. Permanently enjoin Sprague from operating the Searsport and South Portland Facilities except in accordance with the Federal Act, the ME SIP, and other applicable statutory and regulatory requirements;

4.      Order Sprague to pay appropriate civil penalties to the United States for each violation of the Federal Act, the ME SIP, and other applicable statutory and regulatory requirements identified in this Complaint, regarding the Searsport and South Portland Facilities.

5.      Permanently enjoin Sprague from operating the Newington Facility except in accordance with the Federal Act, the NH SIP, and other applicable statutory and regulatory requirements;

6.      Order Sprague to pay appropriate civil penalties to the United States for each violation of the Federal Act, the NH SIP, and other applicable statutory and regulatory requirements identified in this Complaint, regarding the Newington Facility;

7.      Permanently enjoin Sprague from operating the Providence Facility except in accordance with the Federal Act, the RI SIP, and other applicable statutory and regulatory requirements;

8.      Award the Plaintiffs their costs of this action; and

9.      Grant the Plaintiffs such other relief as the Court deems just and proper.


Respectfully Submitted,

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

Dated:  May 29, 2020

/s/ *David Weigert*
DAVID L. WEIGERT
Senior Counsel
PATRICK B. BRYAN
Senior Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 514-0133 (Weigert)
(202) 616-8299 (Bryan)
david.weigert@usdoj.gov
patrick.bryan@usdoj.gov

ANDREW E. LELLING
United States Attorney
District of Massachusetts

SUSAN M. POSWISTILO
Assistant U.S. Attorney
Office of the U.S. Attorney
District of Massachusetts
John Joseph Moakley Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

OF COUNSEL:

THOMAS OLIVIER
Senior Enforcement Counsel
U.S. EPA, Region 1
5 Post Office Square
Suite 100 (Mail Code OES 04-4)
Boston, MA 02109-3912

FOR THE COMMONWEALTH OF
MASSACHUSETTS

MAURA HEALEY
ATTORNEY GENERAL

Dated:  May 29, 2020

*/s/ Christophe Courchesne*
CHRISTOPHE COURCHESNE, BBO# 660507
Assistant Attorney General and Chief
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 963-2423
Fax (617) 727-9665
christophe.courchesne@mass.gov

*Attorney for the Commonwealth of Massachusetts*